UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LIKESHA HILL-HANNAH,

      Plaintiff,

    v.

ESO MANAGEMENT LLC, et al.,

      Defendants.

CIVIL ACTION NO.
1:23-CV-00707-JPB-CCB

## **ORDER**

This matter is before the Court on the Magistrate Judge's Non-Final Report and Recommendation ("R. & R.") [Doc. 23]. This Court finds as follows:

## **FACTS AND PROCEDURAL HISTORY**

The R. & R. sets forth the facts of this case in considerable detail. See [Doc. 23, pp. 1–4]. The Court incorporates those facts by reference here. In short, this is an employment action in which Plaintiff brings claims against Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as well as claims of breach of contract and negligent infliction of emotional distress under Georgia law. See [Doc. 16]. Particularly at issue here is whether the parties are bound by an

arbitration agreement located in an employee manual acknowledged and accepted by Plaintiff.

Plaintiff was employed by the staffing agency ExecuSource.[1] [Doc. 19, p. 6]. On February 21, 2022, ExecuSource and Defendant ESO Management LLC ("ESO")[2] entered into a recruiting services agreement, under which Plaintiff was employed by Defendants through ExecuSource to perform HR services. [Doc. 15-2, pp. 15–17]. On February 26, 2022, Plaintiff acknowledged and accepted ExecuSource's employee manual, which included an arbitration agreement that Defendants seek to enforce against Plaintiff. [Doc. 19-1, pp. 1, 16]. Notably, the employee manual provided that ExecuSource reserved the right to unilaterally modify the manual's terms at any time, with or without notice, at its sole discretion. Id. at 2.

On March 10, 2023, Defendants filed a Motion to Dismiss, or in the alternative, to Compel Arbitration and Stay Proceeding. [Doc. 15]. In the Motion, Defendants argue that this case should be dismissed or, alternatively, that this

---

[1] ExecuSource is not a party to this action.

[2] ESO provides back office shared services, including human resources (HR) services, to the other Defendants Ortho Sport and Spine Physicians, LLC and AVO Real Estate Holdings, LLC. [Doc. 8-1 at ¶ 4 (William Pembroke's Decl.)].

Court should compel arbitration and stay the proceedings pursuant to the arbitration agreement in the employee manual.  See id.  Plaintiff opposes the Motion, arguing that Defendants cannot show that a clearly enforceable contract existed between Plaintiff and ExecuSource.  [Doc. 19, pp. 6–13].  Plaintiff further contends that even if such an agreement exists, Defendants are not its intended third-party beneficiaries, id. at 13–15, 21–24, and that equitable estoppel is of no avail to Defendants because Plaintiff's complaint did not reference, rely on or relate to any contracts between Plaintiff and ExecuSource, id. at 19–21.  On January 31, 2024, Magistrate Judge Christopher C. Bly issued an R. & R. that determined that the arbitration agreement was unenforceable as illusory because the employee manual's terms (including the arbitration clause) were subject to unilateral modification at any time by ExecuSource.  [Doc. 23].  As such, the R. & R. recommended the denial of Defendants' Motion.  Id.

Defendants filed Objections to the R. & R. arguing that the Magistrate Judge erred by finding that the language of the employee manual rendered the arbitration agreement illusory and unenforceable.  See [Doc. 25].  Defendants contend that where a plaintiff challenges the contract in general, and not the arbitration agreement in particular, such a challenge must be decided by the arbitrator, not the Court.  Id. at 1, 6–10.  Defendants also object on the grounds that the disclaimers

found in the employee manual do not render illusory the parties' arbitration agreement.  Id. at 10–21.  Finally, Defendants reiterate arguments made in their initial memorandum of law, namely:  (1) they are intended third-party beneficiaries of ExecuSource's arbitration agreement with Plaintiff; and (2) the doctrine of equitable estoppel enables them to enforce the arbitration agreement as nonsignatories.  Id. at 21–23.  Defendants' Objections are now ripe for review.

### LEGAL STANDARD

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the report and recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  Placing this burden on the objecting party "'facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'"

United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v.

Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

**DISCUSSION**

As previously noted, Defendants object to the R. & R.'s finding that

language in the employee manual that permitted ExecuSource to modify policies

rendered the arbitration agreement illusory and thus unenforceable.  [Doc. 25, p.

1].  Upon review, this Court finds that Defendant is correct that whether an

agreement as a whole is illusory is a determination for the arbitrator.  See

Rodriguez v. Castforce, Inc., 190 F. Supp. 3d 1148, 1153 (N.D. Ga. 2016) (holding

that the arbitrability of the plaintiff's claims must be decided by an arbitrator where

the plaintiff challenged the validity of the contract in general in addition to the

arbitration provision);  see also Anderson v. AIG Life & Retirement, 199 F. Supp.

3d 1371, 1380 (S.D. Ga. 2016) (noting that a challenge to a contract as a whole is

an issue to be decided by the arbitrator, not the court).  Nevertheless, this Court

reaches the same conclusion as the Magistrate Judge and denies Defendants'

Motion, albeit on different grounds.

It is undisputed that Defendants are not parties to the arbitration agreement

between ExecuSource and Plaintiff.  However, under certain circumstances,

nonsignatories may enforce an arbitration clause against a signatory. Interested

Underwriters at Lloyd's v. M/T San Sebastian, 508 F. Supp. 2d 1243, 1249 (N.D. Ga. 2007).  "The issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law."  Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc., 845 F.3d 1351, 1354 (11th Cir. 2017).  Here, the parties agree that Georgia law governs this issue.  See [Doc. 15-1]; [Doc. 19]; [Doc. 25].  Accordingly, Defendants point to two theories under Georgia law to compel arbitration:  (1) they are the intended third-party beneficiaries of Plaintiff's arbitration agreement with ExecuSource, [Doc. 25, pp. 21–22],[3] and (2) equitable estoppel permits them to compel Plaintiff to arbitrate her claims, [Doc. 25, pp. 22–23]; see also [Doc. 15-1, pp. 16–22].  The Court addresses each of these arguments in turn.

## I.      Intended Third-Party Beneficiary Exception

Defendants first argue that they can compel arbitration as the intended third-party beneficiaries of Plaintiff's arbitration agreement with ExecuSource. [Doc. 25, pp. 21–22].  Under Georgia law, "[t]he beneficiary of a contract made

---

[3] In their memorandum of law in support of the original motion to dismiss, Defendants argued that only ESO was an intended third-party beneficiary.  See [Doc. 15-1, pp. 8–14].

between other parties for his benefit may maintain an action against the promisor on the contract." O.C.G.A. § 9-2-20(b). "To determine whether the parties intended any third parties to be beneficiaries of the contract[], courts look to the language included in the contract." Kuchenmeister v. HealthPort Techs., LLC, 309 F. Supp. 3d 1342, 1346 (N.D. Ga. 2018) (discussing Georgia law). "[T]he intent to create a third-party beneficiary must appear on the face of a contract." Perry Golf Course Dev., LLC v. Hous. Auth. of Atlanta, 670 S.E.2d 171, 174 (Ga. Ct. App. 2008). Therefore, for a third party, such as any of the defendants, to have standing to enforce a contract, "it must clearly appear from the contract that it was intended for the third party's benefit. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." U.S. Foodservice, Inc. v. Bartow Cnty. Bank, 685 S.E.2d 777, 779 (Ga. Ct. App. 2009) (alterations adopted). On the other hand, "it is not necessary that the party be specifically named in the contract" so long as "the contract show[s] the contracting parties' intent to benefit the third party, as the cardinal rule of contract construction is to ascertain the intention of the parties." Resurgens, LLC v. Ervin, 894 S.E.2d 408, 414 (Ga. Ct. App. 2023) (citations omitted).

The arbitration agreement between Plaintiff and ExecuSource reads as follows:

> Any controversy or claim arising out of or relating to the employment relationship created between the employer (ExecuSource) and employee (you), including all topics covered in this Employee Manual, and the interpretation of this Manual, or any alleged breach of it, shall be settled by arbitration in accordance with the Arbitration Rules of the American Arbitration Association, with such arbitration to take place in the County of Dekalb, State of Georgia with an agreed upon arbitrator.  If the parties cannot agree on an arbitrator, a court of competent jurisdiction shall appoint an arbitrator at the request of either Party.  Although the parties shall initially bear the cost of arbitration equally to the extent permitted by applicable law, the prevailing party, if any, as determined by the arbitrator at the request of the parties which is hereby deemed made, shall be entitled to reimbursement for its share of costs and reasonable attorneys' fees, as well as interest at the statutory rate.  Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The determination of the arbitrator in such proceeding shall be final, binding, and non-appealable.

[Doc. 19-1, p. 16].  The plain text of the arbitration agreement does not support a finding that Defendants are its intended beneficiaries.  The agreement does not refer to any of the Defendants by name.  Id.  Though the failure to name any of the Defendants is not fatal to their position, the agreement also makes no general reference to ExecuSource's clients.  Id.  This absence is notable because other sections of the employee manual refer to "ExecuSource's Clients."  See, e.g., id. at 5 (discussing the employee's obligations as to client confidential information).[4]  In

---

[4] Even if the Court assumes that (1) the other sections of the manual created contractual obligations between ExecuSource and Plaintiff and (2) ExecuSource and Plaintiff intended to identify ExecuSource's clients (including Defendants) as third-party beneficiaries with respect to those sections, the Georgia Supreme Court

contrast, the critical phrase of the arbitration agreement obligates only the employer (defined as ExecuSource) and the employee (defined as "you," i.e., Plaintiff) to settle disputes by arbitration.  See Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1171 (11th Cir. 2011).  "The [arbitration] agreement does not show, on its face or elsewhere, an intent to allow anyone other than [Plaintiff and ExecuSource] to compel arbitration of a dispute." Id. at 1172.  Therefore, the Court does not find that Defendants are intended third-party beneficiaries of the arbitration agreement.

Defendants support their theory that they qualify as intended third-party beneficiaries to the arbitration agreement by analogizing to several tortious interference cases brought under Georgia law.  [Doc. 25, pp. 21–22]; see also Aim Staffing, LLC v. NOTS Logistics, LLC, No. 11-CV-240, 2013 WL 12251715, at *4–5 (N.D. Ga. Jan. 9, 2013) (finding business hiring temporary employees was third party beneficiary to the agreement between staffing agency and employee and thereby could not be liable for tortious interference); Nicholson v. Windham, 571

---

has emphasized that "a third party beneficiary . . . can only enforce those promises made directly for his benefit."  Archer W. Contractors, Ltd. v. Estate of Pitts, 735 S.E.2d 772, 778 (Ga. 2012).  In other words, even if the Court assumed that Defendants are third-party beneficiaries with respect to some sections of the manual, that would "not imply standing to enforce every promise" within the manual.  Id.

S.E.2d 466, 469 (Ga. Ct. App. 2002) (same); Harper v. DSI Enters., Inc., No. 08-CV-85, 2009 WL 10665765, at *5-6 (N.D. Ga. June 26, 2009) (same); Lee v. Caterpillar Inc., No. 11-CV-2130, 2011 WL 13176333, at *5 (N.D. Ga. Dec. 2, 2011) (finding that plaintiff's employment relationship with employer was the fulfillment of employer's contractual obligations to defendant, so defendant was no stranger to employment contract and thereby not liable for tortious interference).

Defendants argue that, similar to the staffing agency clients in Aim Staffing, LLC, Nicholson, Harper and Lee, they too are third-party beneficiaries. [Doc. 25, pp. 21–22].  In other words, Defendants contend that they are not "strangers" to the contractual relationship between ExecuSource (a staffing agency) and Plaintiff (its employee), thereby enabling them to enforce the arbitration agreement. Id.  This Court disagrees.

"A claim of tortious interference requires that 'the plaintiff establish that the defendant is a third party, i.e., a stranger to the contract with which the defendant allegedly interfered.'"  Lee, 2011 WL 13176333, at *5 (quoting Atlanta Mkt. Ctr. Mgmt., Co. v. McLane, 503 S.E.2d 278, 282 (Ga. 1998)).  The "stranger doctrine"—which Defendants use to argue for their status as intended beneficiaries—was developed in the context of tortious interference claims.  See McLane, 503 S.E.2d at 282–84 (discussing the scope of the "stranger doctrine"

10

under Georgia law).  However, even where an intended third-party beneficiary of a contract is not a stranger to that contract, see McLane, 503 S.E.2d at 283, a "non-stranger" is not always an intended beneficiary.

As the Georgia Court of Appeals explained in Nicholson, the "exclusion of third-party beneficiaries from the 'stranger doctrine' has been expanded to cover those who benefit from the contract of others, *without regard* to whether the beneficiary was intended by the contracting parties to be a third-party beneficiary." 571 S.E.2d at 469 (emphasis added) (quoting McLane, 503 S.E.2d at 283)). Likewise, in Harper, the Northern District of Georgia pointed out that "Georgia law does not make a distinction between intended third-party beneficiaries and unintended, or incidental, beneficiaries" for tortious interference claims.  2009 WL 10665765, at *5; see also BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp., No. 05-CV-1149, 2007 WL 2126272, at *8 (N.D. Ga. July 23, 2007) ("The exclusion of third-party beneficiaries from liability now encompasses entities that benefit from contracts made by others, regardless of whether the contracting parties intended to benefit the entity.").  Therefore, the cases cited by Defendants are not persuasive because the question before the Court is not whether Defendants

11

are third-party beneficiaries generally (or, "non-strangers") but rather whether they are *intended* third-party beneficiaries.[5]

For Defendants to enforce the arbitration agreement against Plaintiff, they must demonstrate that they are its intended beneficiaries. And, under Georgia law, "the mere fact that a third party would benefit incidentally from the performance of the contract [here, the arbitration agreement] is not alone sufficient to give such person standing to sue on the contract." Page v. City of Conyers, 499 S.E.2d 126, 128 (Ga. Ct. App. 1998). Simply put, it is not enough for Defendants to show that they are "non-strangers" to the agreement. Therefore, this Court rejects Defendants' objection on this basis.

## II.    Equitable Estoppel Exception

Defendants next argue that the doctrine of equitable estoppel enables them to enforce the arbitration agreement as nonsignatories under Georgia law. [Doc. 25, pp. 22–23]. "Equitable estoppel allows a nonsignatory to an arbitration agreement to compel or to be compelled by a signatory to arbitrate under certain circumstances in which fairness requires doing so." Lawson, 648 F.3d at 1172.

---

[5] In Harper, for example, the court found that the defendant was not a stranger to the employment relationship at issue regardless of "whether or not [the defendant] was an intended beneficiary." 2009 WL 10665765, at *5.

12

Equitable estoppel applies in two circumstances: (1) when the claims relate to the contract or (2) when the claims against the signatory and nonsignatory arise out of interdependent and concerted misconduct by those parties. Autonation Fin. Servs. Corp. v. Arain, 592 S.E.2d 96, 99 (Ga. Ct. App. 2003). In both circumstances, the signatory's "actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel." Interested Underwriters at Lloyd's, 508 F. Supp. 2d at 1253.

Defendants argue that both circumstances are applicable here because Plaintiff's claims presume the existence of the employment contract and involve intertwined relationships. [Doc. 25, p. 22]; see also [Doc. 15-1, pp. 16–22]. In her response in opposition, Plaintiff argues that none of her claims reference, rely on or relate to any employment contract between Plaintiff and ExecuSource. [Doc. 19, p. 19]. Furthermore, Plaintiff contends that the legal basis for her claims "are in no way formulated on ExecuSource's employee manual." Id. at 20.

Plaintiff's complaint does not refer to ExecuSource's employee manual nor her acknowledgment of its terms. See [Doc. 16]. Though Plaintiff's claims bear some relation to the employee manual because she would not have been employed by ESO but for her employment with ExecuSource, that connection is not enough

to show that her claims "arise out of" the employee manual.  See Bailey v. ERG

Enters., LP, 705 F.3d 1311, 1321 (11th Cir. 2013) ("A but-for relationship between

the claims and the contract alone is not enough to warrant equitable estoppel."

(internal quotation marks omitted)).  And "[u]nder Georgia law, a plaintiff's claims

must *directly*, not just indirectly, be based on the contract containing the arbitration

clause in order for equitable estoppel to compel arbitration of those claims."

Lawson, 648 F.3d at 1172 (emphasis added).

The Court additionally finds that the second basis for permitting equitable

estoppel—when the claims against the signatory and nonsignatory arise out of

interdependent and concerted misconduct—is also not applicable because Plaintiff

does not bring claims against the signatory to the alleged agreement, here,

ExecuSource.  See Bailey, 705 F.3d at 1321 n.12 (finding that the second

circumstance in which equitable estoppel applies is not implicated when the

plaintiffs did not name the signatory as a party and do not allege that the

nonsignatory acted in concert with the signatory to engage in the misconduct).

Because neither basis for permitting equitable estoppel is applicable, the Court

rejects Defendants' objection on this basis.

14

## CONCLUSION

For the foregoing reasons, the Non-Final Report and Recommendation [Doc. 23] is **ADOPTED** as modified herein as the order of this Court.

For the reasons stated in this Court's Order, Defendants' Motion to Dismiss, or in the alternative, to Compel Arbitration and Stay Proceeding [Doc. 15] is **DENIED**.

**SO ORDERED** this 29th day of March, 2024.

**J. P. BOULEE**
United States District Judge

15